GERHARD BECKER AND ELBERT W. SHIRK
v.
JOHN V. FARWELL ET AL., PARTNERS.

*Contribution—Jurisdiction in Equity—Payment—Purchase and Assignment of Judgment—Tort-feasors.*

1. A court of equity has jurisdiction of a bill filed to enforce a contribution.

2. Before one of two or more judgment debtors can maintain a bill for contribution in respect to a judgment against all the parties, he must pay and satisfy such judgment. A payment of money for the purchase and assignment of the judgment to a third person, in such a way as to preserve its validity, is not a payment, and lays no foundation for a claim for contribution.

3. Where a writ issued against one party is executed by seizing goods in the possession of another who claims to be the owner, such seizure is presumptively tortious, and the party procuring it will be presumed to have acted with notice that he was committing a wrong. If he fails to justify such seizure, he must be treated as a wilful tort-feasor.

4. In the case presented it is *held:* That there is no evidence of an express or implied contract on the part of the defendants to contribute to the payment of the judgments in question; and that the facts shown by the record bring the complainants within the general rule forbidding contribution among wrongdoers.

[Opinion filed March 6, 1888.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

This was a bill in chancery brought by John V. Farwell and others, co-partners under the firm name of John V. Farwell & Company, against Gerhard Becker and Elbert W. Shirk, to compel contribution in respect to certain judgments rendered in the State of Iowa. The cause being heard on pleadings and proofs, a decree was rendered in accordance with the prayer of the bill, and the defendants have appealed to this court. The facts, as disclosed by the pleadings and proofs, so far as they are material, are briefly as follows:

For some time prior to December 19, 1881, the firm of Olquist Brothers was carrying on the mercantile business in Monticello, Jones County, Iowa, and also at Center Point, Linn County, Iowa, they having a stock of goods at each of those places. On the day above mentioned they were indebted to various parties for merchandise, viz.: $5,984.23 to the complainants; $2,076.14 to defendant Becker; $234.10 to Sherer, Shirk & Company; $728 to H. L. Eisen & Company, and $1,184.50 to O. R. Keith & Company. A few days prior to the date above named, Olquist Brothers sold and delivered their stock of goods at Monticello to one N. A. Sunberg, and also their stock of goods at Center Point to said Sunberg and one F. B. Olquist, the latter being a brother of the members of said firm, but not connected with them in business. The evidence tends to show that the former of these sales was by way of payment and satisfaction of a chattel mortgage on said stock of goods previously executed by Olquist Brothers to Sunberg. On said 19th day of December, 1881, said creditors commenced suits by attachment in the District Court of Jones County, Iowa,

against Olquist Brothers for the recovery of their respective debts, and caused writs of attachment to be issued to the Sheriffs of both of said counties. Said writs were levied upon both of said stocks of goods, the stock of goods in Jones County being at the time in the actual and visible possession of Sunberg, and the one in Linn County in that of Sunberg and Olquist, the purchasers from Olquist Brothers. Said levies were made in the following order of priority: in Jones County, first, the complainants; second, Sherer, Shirk & Company; third, H. L. Eisen & Company; fourth, O. R. Keith & Company, and fifth, defendant Becker; and in Linn County, first, the complainants; second, defendant Becker; third, Sherer, Shirk & Company; fourth, H. L. Eisen & Company, and fifth, O. R. Keith & Company. By the laws of Iowa attachment creditors take priority in the order in which their writs of attachment are served. The suit in favor of the complainants and the one in favor of defendant Becker were commenced and prosecuted to their final termination by the same attorneys. Shortly after the writs were levied, Becker's agent, who had gone to Iowa for the purpose of employing attorneys and instituting the attachment suit on his behalf, met an agent of the complainants, who, on behalf of his principals, was on the ground for a like purpose, and proposed to him that, as the complainants had a first lien on the stock of goods in Jones County, which would be nearly sufficient to pay their claim, if they would yield their property to Becker so far as their lien upon the goods in Linn County was concerned, Becker would unite with them in contesting any litigation likely to grow out of the service of the attachments. This the agent of the complainants promptly and decidedly refused to do.

The several attachment suits were prosecuted to judgment, and the court having appointed a receiver to take charge of and sell the goods attached, the goods in Jones County were sold and the sum of $4,380.14 realized therefrom, which was all paid over to the complainants in part satisfaction of their claim. The goods in Linn County were also sold and the proceeds were applied first to the satisfaction of the residue of the

complainants' claim, after which the claim of Becker was paid in full, then that of Sherer, Shirk & Company, leaving $55.55, which was applied upon the claim of H. L. Eisen & Company. The residue of that claim, as well as the entire claim of O. R. Keith & Company, remained unsatisfied. Indemnifying bonds were given to the Sheriffs of both counties, at the commencement of their attachment suits, by the complainants, defendant Becker and the firm of Sherer, Shirk & Company.

On the 27th day of December, 1881, Sunberg, claiming to be the owner of the stock of goods attached in Jones County, commenced his action in the District Court of that county against the Sheriff to recover damages for the wrongful seizure of said goods. At about the same time a similar action was commenced by Sunberg and F. B. Olquist against the Sheriff of Linn County in the District Court of that county. Afterward, in pursuance of the provision of a certain statute of Iowa, the complainants were substituted as defendants in place of the Sheriff in the action pending in Jones County, and in the action pending in Linn County, the complainants, defendant Becker, and Sherer, Shirk & Company, were substituted as defendants in place of the Sheriff of that county. Such substitution having been made, both suits were removed to the Circuit Court of the United States. A motion in that court to remand said causes to the State courts was granted, but on petition for a rehearing the order remanding said cause was vacated and the consideration of the motion postponed to await the decision of an appeal to the Supreme Court of Iowa from the order of the District Court, making a substitution of defendants. An appeal was accordingly prosecuted by Sunberg in the Jones County case, and upon such appeal the Supreme Court decided that the statute under which the substitution was made was unconstitutional, and reversed the order discharging the Sheriff and substituting the complainants as defendants in his stead. Both of said causes were thereupon remanded to the State courts. Notwithstanding said decision, the parties substituted as defendants voluntarily elected to continue as such, and the Jones County suit was thereafter prosecuted against the complainants and the Sheriff

jointly, and the Linn County case against the complainants, defendant Becker, and Sherer, Shirk & Company, the Sheriff of that county not being restored as defendant.

Shortly after said cause was remanded, a stipulation, entitled in both suits, and signed by attorneys representing all the parties plaintiff and defendant therein, was filed in the suit in Jones County, said stipulation being as follows:

"It is hereby agreed by and between said parties as follows:

"1st.    The orders of the State courts transferring said causes to the United States Circuit Court are hereby waived, and said causes shall be disposed of as hereinafter stipulated.

"2d.    The case of N. A. Sunberg v. P. O. Babcock and John V. Farwell & Co., pending in Jones County, D. C., shall be tried at the December term, A. D. 1883, of said District Court, provided both parties are then ready for trial. Both parties shall be presumed ready for trial unless the party failing to be ready shall so notify the other party on or before the 1st day of said December term. In case both parties are not ready for trial at said December term the said case shall be continued to the May term of said District Court, A. D. 1884.

"3d.    Both parties reserve the right to appeal from the judgment rendered or to be rendered in said cause pending in Jones County, and the final determination thereof shall determine the property rights of the parties in the case of N. A. Sunberg and F. Olquist v. John V. Farwell & Co. et al., pending in Linn County District Court, so far as the title to said property is concerned.

"4th.    In case final judgment shall be rendered in favor of the plaintiff in the Jones County case, judgment shall be rendered for plaintiffs in the case pending in Linn County. And the judgment in the case pending in Linn District Court shall bear the same proportion to the judgment rendered in the cause pending in Jones County as the amount for which the property involved in the Linn County case, sold at receiver's sale, bears to the amount for which the property involved in the Jones County case sold at said receiver's sale.

"5th.    In case final judgment shall be rendered in the Jones County case for the defendants, final judgment shall also be rendered for the defendants in the Linn County case."

A trial was afterward had in the Jones County case before the court and a jury, resulting in a verdict in favor of the plaintiff for $8,015. For this sum judgment was rendered for the plaintiff, and on appeal to the Supreme Court of Iowa said judgment was affirmed. Said stipulation was thereupon filed in Linn County, and in pursuance of its provisions a judgment was entered in the cause pending in that county in favor of the plaintiffs therein for $7,541.18.

The evidence tends to show that defendant Becker and the firm of Sherer, Shirk & Company, or their agents, were fully informed, from time to time, by the attorneys defending said suits, of the pendency of the suits and of the various proceedings therein, and that no objection was made by them to any of said proceedings. It also appears that they contributed, from time to time, various sums of money to defray the expenses of both of said suits in the District Courts, as well as of the appeal from the judgment rendered in Jones County to the Supreme Court of Iowa. After the last mentioned judgment had been affirmed by the Supreme Court, and a few days before the entry of the judgment in Linn County, one of the attorneys for the plaintiffs in said suit called on the complainants in Chicago and demanded of them immediate payment of both the Jones County judgment and the claim upon which they were then entitled by stipulation to judgment in the Linn County suit, threatening, that if such payment was not instantly made, to proceed without any delay in the matter of both judgments by way of levying on the complainant's property and garnishing their debtors in Iowa. The complainants, after endeavoring in vain to obtain sufficient delay to enable them to obtain contribution from their codefendants, gave to said attorney their checks for the full amount of both judgments. At the same time a computation of the amount of the Linn County judgment as the same was to be entered by stipulation having been made, a further stipulation was drawn up and signed by said attorney and one of the attorneys for the defendants in said suits who was also present, to the effect that judgment should be entered in Linn County for said sum of $7,541.18.

The complainants also at the same time gave to said attorney for the defendants their check for the residue of attorney's fees and other expenses in the matter of said suits, the total sum so paid by the complainants in the matter of said judgments, costs, fees and expenses being $17,736.99. The complainants, however, instead of having said judgments satisfied and discharged of record, procured an assignment thereof to H. S. Parkhurst, one of their attorneys, for the avowed purpose of keeping them alive, in order to enforce contribution from their co-defendants. Said judgments, so far as appears, are still held by said Parkhurst under said assignment.

The court below found that defendants Becker and Shirk, the latter being a member of the firm of Sherer, Shirk & Company, were each liable to contribute in respect to the full amount of said judgments and expenses, such contribution to be made in proportion to the respective amounts collected by the complainants, said Becker and the firm of Sherer, Shirk & Company, by means of said attachment suits. It was accordingly decreed that said Becker should pay to the complainants the sum of $5,048.75, and said Shirk the sum of $554.75.

Messrs. BECK & CHARLTON and JOHN GIBBONS, for G. Becker, appellant.

Mr. FREDERIC ULLMAN, for Elbert W. Shirk, appellant.

Messrs. TENNEY, BASHFORD & TENNEY, for appellees.

A suit in equity is the proper remedy for contribution. Johnson v. Vaughn, 65 Ill. 425; Wincock v. Turpin, 96 Ill. 135; Buchanan v. Meisser, 105 Ill. 638; Pixley v. Gould, 13 Ill. App. 565; Cary v. Holmes, 16 Gray, 127; Whitman v. Porter, 107 Mass. 522; Nickerson v. Wheeler, 118 Mass. 295; Whitcomb v. Converse, 119 Mass. 38; Deering v. Winchelsea, 1 Leading Cas. Eq. 120, and notes.

Where several parties are jointly concerned in a transaction, and in carrying it out according to arrangement, and without any intent to injure others, are nevertheless made liable

Becker v. Farwell.

by some invasion of another's rights, if one should be compelled to make good the loss, he may compel contribution from his associates. As between himself and them he is not a wrongdoer. Cooley on Torts, p. 147.

The rule that wrongdoers can not enforce contribution is confined to cases where the person claiming redress must be presumed to have known that the act for which he has been mulcted in damages was unlawful. It is undoubtedly the policy of the law to discountenance all actions in which a party seeks to enforce a demand originating in a wilful breach or violation on his part of the legal rights of others. No one can be permitted to relieve himself from the consequences of having intentionally committed an unlawful act, by seeking an indemnity or contribution from those with whom or by whose authority such unlawful act was committed. But justice and sound policy, upon which this salutary rule is founded, alike require that it should not be extended to cases where parties have acted in good faith, without any unlawful design, or for the purpose of asserting a right in themselves or others, although they may have thereby infringed upon the legal rights of third parties. It is only when a person knows, or must be presumed to know, that his act was unlawful, that the law will refuse to aid him in seeking an indemnity or contribution. Jacobs v. Pollard, 10 Cush. 287; Bailey v. Bossing, 28 Conn. 455; Stanton v. McMullen, 7 Ill. App. 326; Goldsborough v. Darst, 9 Ill. App. 205; Pixley v. Gould, 13 Ill. App. 565; Nelson v. Cook, 17 Ill. 443; S. C. 19 Ill. 440; Severin v. Eddy, 52 Ill. 189; Gower v. Emery, 18 Me. 83; Saulspau v. Louisville, etc., 1 Tenn. Ch. 8; Howe v. Buffalo, 37 N. Y. 297; Castle v. Noyes, 14 N. Y. 332; Stone v. Hooker, 9 Cowen, 154; Coventry v. Barton, 17 Johns. 142; Leggett v. DuBois, 5 Paige Ch. 468; Harbach v. Elder, 18 Pa. St. 33; Armstrong v. Clarion Co., 66 Pa. St. 218; Moore v. Appleton, 26 Ala. 633; Acheson v. Miller, 2 Ohio St. 203; Dugdale v. Lovering, 12 Moak's Eng. R. 316, and note; Bully v. Batty, 12 E. C. L. 649, Betts v. Gibbons, 2 A. & E. 57; 1 Parsons on Con. 37; 1 Hilliard on Torts, 188, note a; 1 Waterman on Trespass, sections 29 and 31.

BAILEY, J. It is objected that the enforcement of contribution is properly a matter of legal cognizance, and that a court of equity, therefore, has no jurisdiction. The right to contribution does not arise out of any contract or agreement between the parties, but from the principle of equity, that where two or more persons are subject to a common burden, it shall be borne by them according to their respective interests. Golsen v. Brand, 75 Ill. 148; Griffeth v. Robinson, 14 Ill. App. 377; Drummond v. Yager, 10 Ill. App. 380. This principle is so universally acknowledged that persons acting under circumstances to which it applies, are said to act under the head of contract implied, from the universality of the principle, and upon this ground stands the jurisdiction of suits for contribution assumed by courts of law. Craythorne v. Swinburne, 14 Ves. Jr. 160.

But while jurisdiction at law is sustained, courts of equity have always exercised a concurrent jurisdiction, founded upon the fact that the legal remedy is not, under all the circumstances, full, adequate and complete. 1 Pomeroy's Eq. Juris. Sec. 139. As said by Mr. Story, "in most cases of this sort there is no remedy at law, from the extreme uncertainty of ascertaining the relative proportion which different persons, having interests of a different nature, quantity and duration in the subject-matter, ought to pay. And where there is a remedy, it is inconvenient and imperfect, because it involves a multiplicity of suits, and opens the whole matter for contestation anew in every successive litigation." 1 Story's Eq. Juris., Sec. 483.

And the same learned author further says: "The remedial justice of courts of equity in all cases of apportionment and contribution is so complete and so flexible in its adaptation to all the particular circumstances and equities, that it has, in a great measure, superseded all efforts to obtain redress in any other tribunal." 1 Story's Eq. Juris., Sec. 505.

Assuming, then, that the court of chancery had jurisdiction, the question is whether, upon the facts disclosed upon the pleadings and proofs, the complainants are entitled to contribution. An obstacle, apparently insurmountable, arises *in limine* from the fact that the complainants have not paid and

satisfied the judgments in respect to which they are seeking to obtain contribution from the defendants. The transaction, in form at least, is a purchase of the judgments and their assignment to Parkhurst, for the avowed purpose of keeping them alive and in force. Before the complainants can properly demand contribution from their co-defendants, they must pay and satisfy the judgments, and the expenditure of money in purchasing them and obtaining an assignment of them to a third person, in such a way as to preserve their vitality as judgments, is not a payment, and lays no foundation for a claim for contribution.

But even if we were able to treat the purchase of the judgments ·and their assignment to Parkhurst, the complainant's attorney, as equivalent to a payment, we are still of the opinion that no case for a contribution is shown. There is no evidence of an express or implied contract on the part of the defendants to contribute. The stipulation by which it was agreed that the case in Jones County should be tried, and that the case in Linn County should abide the event of such trial, contained no provision which can, by any possibility, be construed into such a contract. Nor is one to be implied from the fact that the defendants united with the complainants in defending the suits, and employed the same attorneys and, in fact, contributed to the payment of attorneys' fees and other expenses and disbursements attending the litigation. None of these acts involved, either expressly or by implication, an undertaking to join the complainants in paying off the judgments, if any, which might be recovered against them. We have also carefully considered the correspondence between the defendants and their attorneys during the progress of the litigation, which was produced at the hearing and offered in evidence, but failed to find in it any proof of an agreement to contribute in any manner to the payment of said judgments. It then remains to be determined whether the case is one involving the application of the general principle above referred to, which compels persons subject to a common burden to bear it according to their respective interests.

It is a general rule, subject, it is true, to some exceptions,

that the law will not compel contribution among tort-feasors.
A leading case in which this principle was laid down is Merri-
weather v. Nixon, 8 Durn. & East, 186, where it was held that
if a plaintiff recovers in tort against two defendants, and levies
the whole damage on one, that one can not recover a moiety
against the other for his contribution. This case was cited
and approved in Nelson v. Cook, 17 Ill. 443, the court saying
that the rule there laid down has been and still is recognized
as unquestionable law. See also, Nichols v. Nowling, 82 Ind.
488; Minnis v. Johnson, 1 Duval, 171; Peck v. Ellis, 2 Johns.
Ch. 131; Acheson v. Miller, 18 Ohio, 203; Rhea v. White, 3
Head, 120; Anderson v. Saylors, 3 Head, 551; Baird v.
Midvale Steel Works, 12 Phila. 255; Herr v. Barber, 2 Mackey,
545.

The foregoing rule does not seem to be questioned, but an
attempt is made to bring the present case within the excep-
tion which restricts the operation of the rule to cases where
the tort-feasor seeking contribution knew, or must be pre-
sumed to have known, that his act was unlawful. The prin-
ciple here involved is fairly illustrated by the case of Jacobs
v. Pollard, 10 Cush. 278, though that case was not strictly a
case of contribution. There A, in good faith, took up B's
cattle *damage feasant*, and C, a field-driver, at A's request,
sold them at auction and received the money. The proceed-
ings were irregular, and A and C were, in fact, joint trespass-
ers. A judgment in trespass having been obtained against
them by the owner of the cattle, A was compelled to pay it.
A thereupon brought suit against C for the money received
by him for the cattle and was permitted to recover. The
court, after recognizing the policy of the law which dis-
countenances all actions in which a party seeks to enforce a
demand originating in a wilful breach or violation on his part
of the legal rights of others, lays down the rule as follows:
" It is only when a person knows, or must be presumed to
know, that his act was unlawful, that the law will refuse to aid
him in seeking an indemnity or contribution. It is the unlaw-
ful intention to violate another's rights, or a wilful ignorance
and disregard of those rights, which deprives a party of his

Becker v. Farwell.

legal remedy in such cases. It has, therefore, been held, that the rule of law, that wrongdoers can not have redress or contribution against each other, is confined to those cases where the person claiming redress or contribution, knew, or must be presumed to have known, that the act for which he has been mulcted in damages, was unlawful."

In Acheson v. Miller, 2 Ohio St. 203, a judgment having been recovered against one Lewis on a draft for $5,000, and judgment also having been recovered against six indorsers on said draft, four of the indorsers indemnified the Sheriff and directed him to levy on a stock of merchandise then recently the property and then in the possession of Lewis, but which at about that time had been assigned to one Gilbert. Gilbert brought suit against the Sheriff and the four indorsers and recovered judgment for the value of the goods. In a suit brought by one of the four indorsers against another indorser who had nothing to do with the levy for contribution, the court say : "The rule that no contribution lies between trespassers, we apprehend, is not one of universal application. We suppose it only applies to cases where the persons have engaged together in doing wantonly or knowingly a wrong. The case may happen that persons may join in performing an act which to them appears to be right and lawful, but which may turn out to be an injury to the rights of some third party, who may have a right to an action of tort against them. In such case, if one of the parties who have done the act has been compelled to pay the amount of the damage, is it not reasonable that those who were engaged with him in doing the injury should pay their portion ?"

In Adamson v. Jarvis, 4 Bing. 66, substantially the same question arose, and Best, C. J., discussing the case of Merryweather v. Nixon, *supra*, says: "From the concluding part of Lord Kenyon's judgment in that case, and from reason, justice and sound policy, the rule that wrongdoers can not have redress or contribution against each other, is confined to cases where the person seeking redress must be presumed to have known that he was doing wrong." See, also, Betts v. Gibbons, 2 Adol. & Ellis, 57; Pearson v. Skelton, 1 Mees.

& Wels. 504; Wooley v. Batte, 2 Car. & Payne, 417; Coventry v. Barton, 17 Johns. 142; Bailey v. Bussing, 28 Conn. 455.

The question, then, is whether the present case is one in which the complainants, at the time they caused their attachment writs to be levied upon the stocks of merchandise in question, knew, or must be presumed to have known, that in so doing they were committing a tortious act. The attachment writs were sued out against Olquist Brothers, but the complainants caused them to be executed by seizing goods not in the possession of the defendants to the writs, but in the possession of third parties who were strangers to the writs, and who were the ostensible and apparent owners, and, as the subsequent litigation conclusively showed, the actual owners of said goods. Where a writ, issued against one party, is executed by seizing goods in possession of another party who claims to be the owner, such seizure is presumptively tortious, and the party procuring such seizure must be presumed to have acted with notice that he was committing a wrong. It is not the case of the commission of an act apparently right and lawful, but which happens to turn out to be an injury to some third person, but an act which, upon its face, is an unlawful invasion of the rights of such third person. Undoubtedly, if the complainants had succeeded in establishing the invalidity of the sale of goods by the defendants in their attachment to the parties from whose possession the goods were taken, such fact would have justified their seizure. But when they ventured to levy their writ upon property in the possession of third persons, they undertook to establish a justification of such levy at their peril, and having failed to do so they must be treated as wilful tort-feasors.

We are of the opinion, then, that the facts shown by the record bring the complainants within the general rule which forbids contribution among wrongdoers, and that the decree awarding such contribution is unwarranted by the evidence. The decree will therefore be reversed and the cause remanded, with instructions to the court below to dismiss the bill, at the complainant's costs, for want of equity

*Decree reversed.*